IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RONALD A. ABRAMSON, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 05-6212-PK |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

MARK MANNING
Cram, Harder, Wells & Baron
474 Willamette, Suite 200
Eugene, Oregon 97401
    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

RICHARD M. RODRIGUEZ
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

PAPAK, Magistrate Judge:

Plaintiff Ronald Abramson seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).  For the reasons below, I recommend the Commissioner's motion for remand be granted, and the case remanded for further proceedings.

## BACKGROUND

Born in 1944, Abramson completed high school and in 1967 completed two years of college education.  Tr. 57, 66.[1]  Between 1985 and 1998 Abramson intermittently worked as a security guard, or gate tender, and as a janitor.  Tr. 88.

Abramson alleges disability since June 18, 2002 due to diabetes, depression, and lower extremity swelling.  Tr. 57, 69.  After a December 15, 2004 hearing, an Administrative Law Judge (ALJ) found Abramson could return to his past relevant work as a gate tender.  Tr. 21. Abramson seeks review of this finding.

The matter is now before the court on the Commissioner's motion to remand for further administrative proceedings (docket # 18).  The Commissioner moves to remand for establishment of vocational testimony reflecting observations of a reviewing physician. Abramson opposes the Commissioner's motion and seeks an order remanding for the calculation and award of benefits.  This court finds both arguments unpersuasive, for the reasons below.

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on December 28, 2005 (Docket #13).

2 - OPINION AND ORDER

## MEDICAL BACKGROUND

The medical evidence produced by Abramson's treating physician, Dr. Singh, shows that Singh treated Abramson for diabetes and hypertension between October 1999 and January 2003. Tr. 160 - 172.  Singh also noted and treated Abramson's depression between November 2001 and January 2003.  Tr. 160 - 167.

Additional notes produced by the White Bird clinic indicate that Abramson continued to carry diagnoses of depression and diabetes until October 2004, when the record closes.  Tr. 250 - 259.

Between June 2002 and August 2002, Abramson had chronic lower extremity edema.  Tr. 139 - 140, 163.  Initial reports show indeterminate cause for Abramson's edema, but upon withdrawal of Avandia, a diabetic medication, Abramson's swelling decreased in August 2002.  Tr. 162.  By November 2002, Singh's records show Abramson's edema was completely resolved.  Tr. 161.  Singh later noted Abramson reported "fairly constant" leg pain in May 2003.  Tr. 251.

White Bird notes indicate indeterminate knee pain between May and October 2004.  Tr. 250 - 259.  The ALJ considered Abramson's lower extremity disorders impairment in combination.  Tr. 18.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential  process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  Abramson challenges the ALJ's evaluation of the evidence and his conclusions at step four.

3 - FINDINGS AND RECOMMENDATION

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I)  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four or work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at

1098. If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g), 416.920(g).

## THE ALJ'S FINDINGS

The ALJ found Abramson not "wholly credible regarding any allegation for disability for Social Security purposes." Tr. 21

The ALJ found Abramson's ability to work moderately limited by his obesity, diabetes mellitus with stasis dermatitis, history of lower extremity edema, left shoulder calcific tendinitis, depression, pain disorder, personality disorder with schizoid, avoidant, and passive aggressive features, and alcohol dependence, in questionable remission. Tr. 18. The ALJ evaluated Abramson's RFC:

> [T]he claimant retains the residual functional capacity to be on his feet for 60 minutes at a time, after which he must sit for 20 minutes; he has moderate limitations on understanding, carrying out, and remembering detailed instructions; he has moderate limitations on working with the general public, or in working with others without distracting or being distracted by them; he can have brief and occasional contact with the general public; he should perform no team oriented work.

Tr. 18 - 19.

At step four, the ALJ found that Abramson's RFC did not preclude him from performing his past relevant work as a "gate tender." Tr. 21. The ALJ solicited testimony from a vocational expert who confirmed that Abramson could return to this work. Tr. 21. Accordingly, the ALJ determined that Abramson was not disabled under the Act at any time through the date of his

5 - FINDINGS AND RECOMMENDATION

decision. Tr. 22 - 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). In reviewing a credibility finding, the reviewing court must consider whether the Commissioner provided "clear and convincing reasons" for finding a claimant not credible. *Reddick v. Chater*, 157 F.3d, 715, 722 (9th Cir. 1998). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Abramson contends the ALJ made an improper step four finding because the ALJ solicited vocational expert testimony based upon an improper RFC calculation. Abramson does not challenge the ALJ's credibility determination, but suggests Abramson's testimony establishes disability.

**I. Abramson's Credibility**

The ALJ made the following credibility assessment:

> As the claimant is shown to be able to perform a reduced range of

6 - FINDINGS AND RECOMMENDATION

> work despite his documented "severe" impairments, he cannot be found wholly credible regarding any allegation of disability for Social Security purposes. On the same bases, any allegation by a lay source that he is incapacitated must be discounted.

Tr. 21. This finding is improper and unsupported for the reasons below.

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In construing credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*. However, once a claimant shows evidence of an underlying medical impairment, unless there is evidence of malingering, the Commissioner must show clear and convincing reasons for disregarding the claimant's testimony. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (citing *Cotton v. Bowen*, 700 F.2d 1043, 1047 (9th Cir. 1986)).

Credible testimony reflecting pain and symptoms stemming from a medically established impairment should be incorporated into the claimant's RFC determination. *See Smolen*, 80 F.3d at 1285, 20 C.F.R. §§ 404.1512(b)(3); 416.913(b)(3).

The credibility statement above makes no effort to apply these legal standards. The ALJ established Abramson's RFC *prior* to making a credibility determination. Tr. 18, 21. Because a claimant's testimony reflecting an established impairment, if credible, should be incorporated

7 - FINDINGS AND RECOMMENDATION

into a claimant's RFC, this is clearly erroneous. *See Smolen*, 80 F.3d at 1285.

Abramson submits that, "The ALJ did not address the plaintiff's testimony and presumably credited the testimony as true." (Plaintiff's Opening Brief, 6.) This argument fails in light of the ALJ's credibility assessment discussed above.

Credibility determinations and resolution of evidentiary conflicts are reserved for the ALJ. *Magallanes*, 881 F.2d at 750. Because no appropriate credibility decision was made, Abramson's testimony should not be credited.

**II.  The ALJ's RFC Calculation**

The Commissioner suggests the ALJ's RFC is not supported by the medical evidence and must be recalculated. In supporting this argument, the Commissioner cites the opinion of a reviewing physician, Dr. Buckland, that Abramson could sustain "medium" work. (Defendant's Brief, 8.) The ALJ noted Buckland's opinion, but found that Abramson could only sustain light work after evaluating evidence from Abramson's treating physician, Dr. Singh, and an examining physician, Dr. Tarro. Tr. 19.

Generally, a treating physician is accorded greater weight than an examining physician, and an examining physician is accorded greater weight than a reviewing physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 2003). Here the ALJ appropriately reviewed treating, examining, and reviewing sources, assigning greater weight to treating physician Singh and examining physician Tarro. Tr. 19. The ALJ is responsible for evaluating medical evidence and resolving any evidentiary ambiguities or conflicts. *Edlund*, 253 F.3d at 1039, *Magallanes*, 881 F.2d at 750.

For these reasons the ALJ's present evaluation of the medical evidence and subsequent

8 - FINDINGS AND RECOMMENDATION

RFC should be sustained. If the ALJ should find Abramson credible upon reconsideration, any additional limitations stemming from Abramson's testimony should be added to the present RFC statement.

### III.  The ALJ's Step Four Finding

Abramson suggests the ALJ erred in finding Abramson could return to his past relevant work as a gate tender. In considering whether Abramson could return to this work, the ALJ solicited testimony from a vocational expert (VE). Tr. 21, 288 - 290. The ALJ gave the VE a hypothetical question, based upon Abramson's RFC discussed above:

> [Abramson] is limited from being on his feet longer than one hour at a time. He then needs to sit for 20 minutes. He has moderate limitations understanding, remembering, and carrying out detailed instructions, working with the public, and working with others without getting distracted. So, working with the public he could have brief, occasional public contact. And he should not attempt work which is team oriented.

Tr. 290. The VE suggested Abramson could work as a gate tender with these limitations. Tr. 290.

The ALJ is required to propound a hypothetical to the VE "that is based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2003). The ALJ may exclude unsupported limitations suggested by counsel. *Id.*

Here the ALJ's hypothetical question included Abramson's supported limitations in social functioning and postural changes. Tr. 290. In suggesting Abramson could perform work as a gate tender, the VE accounted for Abramson's postural limitations. Tr. 290-293. Because the *Dictionary of Occupational Titles* suggests a gate tender position entails "significant" speaking

9 - FINDINGS AND RECOMMENDATION

with people functions, Abramson submits that the VE's testimony did not account for his restrictions in public contact. *Dictionary of Occupational Titles* (*DOT*), 372.667-030 (U.S. Department of Labor, 4th ed., 1991), Tr. 290 - 292.

In establishing whether a claimant may return to his past relevant work, the VE may consider that work as the claimant performed it, rather than relying upon generic job descriptions or the *DOT*. SSR 82-61 *1-2 (available at 1982 WL 31387). Here, the VE said, "I believe he would be able to do the work as a gate tender, that he performed." Tr. 290. However, the record does not reflect that the VE heard or reviewed testimony regarding how Abramson performed security guard or gate tender work. Tr. 271-293.

In light of Abramson's need for restricted public contact in his employment and the DOT's "significant" public contact description, this court finds that the VE's testimony does not adequately reflect Abramson's limitations. Therefore, this testimony has limited evidentiary value. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). The ALJ's step four finding based upon this testimony should not be sustained. *Matthews*, 10 F.3d at 681.

### III.    Grids

Abramson finally submits that, rather than making a step five finding, the Commissioner should find him disabled under 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.06 ("the Grids"). Strict application of these formulae generally applies to exertional impairments only; the grids may be used for non-exertional impairments "only when the grids completely and accurately describe the claimant's abilities and limitations." *Tackett*, 180 F.3d at 1102 (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)), 20 C.F.R. Subpt. P, App.2 § 200.00(e).

Abramson's non-exertional limitations include 1) postural limitations and 2) limitations in

contact with co-workers or the general public. Tr. 18 - 19.  Such non-exertional limitations significantly limit performance of a "range of work" and therefore do not fall within the grids. *Tackett*, 180 F.3d 1102 - 1103.  Evaluation of such non-exertional impairments at steps four and five requires the assistance of VE testimony.  *Id.*   The Commissioner must then make independent step four and five findings based upon vocational testimony.

## REMAND

This court has discretion to remand for further proceedings or for immediate payment of benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision.  *Rodriguez v. Brown*, 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  *Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292).  The third prong of this test is a subpart of the second.  *See Harman*, 211 F.3d at 1178 n.7.

The crediting as true rule is not mandatory.  *Connett v. Barnhart*, 340 F.3d, 871, 876 (9th Cir. 2003).  Thus, when the court finds that the ALJ improperly rejected a claimant's subjective symptom testimony, it has some flexibility and is not required to credit the testimony as a matter

of law and award benefits. *Id.*

The errors above do not warrant immediate award of benefits. While the ALJ improperly rejected Abramson's testimony, the other evidence does not presumptively establish disability. The ALJ must re-evaluate claimant testimony under the proper legal standards. The ALJ must then assess a new RFC incorporating properly construed credibility findings. Fresh vocational testimony is subsequently required, appropriately responding to all elements of the RFC, including limited standing and limited public contact. *Tackett*, 180 F.3d at 1102 - 1103.

It is not clear from the record that the ALJ would be required to find Abramson disabled if the improperly rejected evidence were credited as true. Accordingly, further proceedings are necessary and the evidence will not be credited. *Harman*, 211 F.3d at 1778; *Smolen*, 80 F.3d at 1292.

///

///

///

///

///

## **CONCLUSION**

This court finds that the Commissioner's decision that Abramson did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is not based upon correct legal standards and recommends the Commissioner's motion to remand be GRANTED for consideration of Abramson's testimony, an RFC calculation including any

additional limitations established by that testimony, and VE testimony incorporating the revised RFC.

## **SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due August 23, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the obkjections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 8th day of August, 2006.

                                                __/s/ Paul Papak_____
                                                Paul Papak
                                                United States Magistrate Judge